Esso Standard Oil Co. (P.R.), Appellant, v. The Registrar of Property of Arecibo, Respondent.

No. G-62-4.    Decided May 8, 1963.

*James R. Beverley, R. Rodríguez Lebrón, William Estrella,* and *José Carbia Miranda* for appellant. The respondent registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

In the Registry of Property of Arecibo, Puerto Rico, there was presented deed No. 27, executed on June 6, 1958 before Notary José Carbia Miranda, whereby Leovigildo Vidal Soler leased to Esso Standard Oil Co. (P.R.) a lot consisting of 728.24 square meters for a period of 10 years, including the structures thereon devoted to a service station. According to clause nine of that deed, the structures in question "do not appear recorded in the Registry of Property and the lessor hereby records them at this time." The Registrar refused to record on the ground that the lessor's wife did not give her consent for such lease, since "the structures standing on the lessor's land belonging separately to him . . . during his marriage to María Pastor Benero, are considered as property of the community partnership."

Esso Standard Oil Co. (P.R.) appealed from such decision alleging to that effect that in denying the record sought the Registrar erred (1) in refusing to record on the basis of a determination made of the deed of lease alone without taking into consideration the entries of the Registry referring to the property in question; and (2) in requiring the appearance of the spouse when the property is recorded as separate property in the name of a particular person. Regarding the latter error, it alleges that whenever a Registrar records certain property as separate property in the name of a particular person, another Registrar cannot require the concurrence of the person's spouse whenever the property is sought to be encumbered or alienated.

For a better understanding of the problem under consideration, it is necessary to make a brief statement of the registration status of the title on which the entire controversy hinges.

Vidal Soler acquired by inheritance a certain property, which was recorded as his separate property, consisting of one and one half cuerdas as it appears from the thirteenth

entry of property No. 126 at folio 189, Vol. 62 of Manatí. At that time this property owner was married to María E. Pastor Benero. According to the eighteenth entry, on July 3, 1948 the Registrar recorded a mortgage upon a lot of 1778.27 square meters which was part of the aforesaid property to secure a note to bearer for the sum of $4,000. That mortgage was executed by Vidal Soler alone as title owner by inheritance of the real property so encumbered. It is in this entry that it appears for the first time in the Registry that that lot contains certain structures under construction "for a service station." The following also appears in this entry as part of the description of the real property object of the mortgage:

"18th—Mortgage—Rural: Lot situated in the ward of Pueblo of the Municipal District of Manatí, consisting of one thousand one hundred and seventy-eight and twenty-seven hundredths square meters, containing a *concrete building under construction for a filling station, another block building under construction for garages, and a frame building devoted to garage.*" (Italics ours.)

In this same entry it is further stated that "Mr. Vidal, *in his own right, since the property was inherited, constitutes a mortgage on said lot of this property which is described at the beginning of this entry.*" (Italics ours.) By subsequent entries Vidal Soler, by himself and without the concurrence of his wife, leased the property to Francisco Vázques Escobar. Subsequently Vidal Soler constituted other mortgages on the property without the concurrence of his wife, and in the latter of these mortgages object of entry No. 25 it is set forth that the property "contains several structures."

On June 26, 1958, by deed No. 26 executed before Notary José Carbia Miranda, a lot of 728.24 square meters was segregated from said property No. 126. The parcel segregated was recorded as separate property of Vidal Soler by the Registrar who preceded the incumbent, respondent herein. In that segregation no mention was made of any structure

standing on the parcel in question. Consequently, no record of such structures was made in the first entry of the parcel segregated. The lease of said parcel, object of deed No. 27 and to which reference has already been made, was executed that same day. Paragraph No. 9 of this deed provides as follows:

"Ninth: The Lessor and the Lessee wish to set forth that this lease contract includes not only the above-described lot but also the structures standing thereon which are devoted to a service station, consisting of the main building constructed of reinforced concrete and blocks and having a frontage of four and ten hundredths (4.10) meters and a depth of ten and twenty hundredths (10.20) meters and a frame and zinc annex having a frontage of nine and fifty hundredths (9.50) meters and a depth of three and sixty hundredths (3.60) meters, and another annex constructed with blocks having a frontage of three and forty hundredths (3.40) meters and a depth of two and sixty hundredths (2.60) meters and two reinforced concrete workshops for lubricating and washing automobiles. *Since these structures do not appear of record in the Registry of Property, the Lessor does hereby record them at this moment setting forth that they are worth One Thousand Dollars.*" (Italics ours.)

Respondent Registrar has signified his conformance with this registration status of the property in question.

It is evident that it does not appear clearly from the Registry that the structures standing on the main property had been constructed precisely on the portion of the property which was afterwards segregated and recorded as separate and independent private property of Vidal Soler. Not only are those structures not mentioned as lying within the parcel segregated, but when the latter was leased to petitioner it was set forth in the deed of lease that certain structures standing on the parcel segregated *"do not appear of record in the Registry,"* and by the deed of lease *"the Lessor does hereby record them setting forth that they are worth One Thousand Dollars."* (Italics ours.) However, it also appears from the Registry that the descriptions of the structures standing on the main property and on the parcel segregated

therefrom are substantially similar and the use thereof is the same; that no mention is made of other structures standing thereon; and that no time intervened between the segregation and the lease of the parcel in question during which Vidal Soler could have built the structures described in the lease of the parcel segregated, since the segregation and the lease were made the same day. Moreover, respondent Registrar himself admits, in support of his decision, that the structures in question were recorded by his predecessor as separate property of Vidal Soler. Hence, it must necessarily be concluded that they are the same structures mentioned in the eighteenth entry of the main property which was subsequently leased and mortgaged by Vidal Soler without the concurrence of his wife by deeds which were recorded without the defect pointed out by respondent Registrar.

From the foregoing it appears that the question for decision is, as maintained by respondent Registrar, whether the latter may determine at this time whether the structures in question belong to the community partnership constituted by Vidal Soler and his wife, and, hence, whether the latter was required to appear with him, or, on the contrary, whether the reference made to those structures in the eighteenth and twenty-fifth entries of the main property constitutes the recording of such structures so that the recording of the mortgage of the lot without the wife's concurrence constituted in law a determination that the structure was the separate property of the owner of the lot which, as alleged by petitioner, cannot be subsequently questioned by respondent registrar in connection with the recording of the lease agreed upon in said deed No. 27.

For the purposes of decision, it is necessary to determine which is the state of law in this case. The applicable statute is § 18 of the existing Mortgage Law (30 L.P.R.A. § 43) which provides:

"Registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, upon the facts that appear from said instruments themselves.

"They shall likewise, under their responsibility, pass on all documents issued by judicial authorities for the sole purpose of admitting, suspending or refusing their admission to record or entry.

"The only remedies against a decision suspending or refusing to admit to record or to enter a cautionary notice shall be such as are provided for in this subtitle, and judges and courts can not otherwise compel registrars to make records or entries by virtue of judicial documents."

■ The general applicable doctrine announced in *Hernández* v. *Registrar*, 67 P.R.R. 423 (1947); *Graciani* v. *Registrar of San Germán*, 25 P.R.R. 41 (1917); *Rodríguez* v. *Registrar of Mayagüez*, 26 P.R.R. 66 (1917); and *Estate of Blanco* v. *Registrar of Property*, 16 P.R.R. 64 (1910), is to the effect that in passing upon an instrument subject to record in the Registry of Property, the Registrar must abide by the disclosures of the instruments presented bearing in mind the entries in the Registry referring to the same property. The state of law created by the records made must be respected until it is modified in some way known in law, since otherwise it would constitute "an usurpation of the courts' inherent power. . . . The entries made in the Registry must be considered valid in themselves and as to the act recorded, regardless of the defects observed later, until such time as the courts adjudge their nullity, and they may not be annulled nor questioned by the Registrar nor by his hierarchical superiors." XX-2 Morell y Terry, *Comentarios a la Legislación Hipotecaria* 264 (1927 ed.); II Roca Sastre, *Derecho Hipotecario* 18.[1]

---

[1] In the following cases we have considered the scope of this doctrine: *Water Resources Authority* v. *Registrar*, 71 P.R.R. 24 (1950), in which we reiterated the doctrine announced in *López* v. *Registrar*, 58 P.R.R. 1 (1941), and in *Rosado* v. *Registrar*, 68 P.R.R. 552 (1948), and we there-

The doctrine in question presupposes the registration and, consequently, the previous determination of the title to the real property or real right in a former entry in the Registry referring to the same property.

■ The registration of new structures on one's own recorded land may be made in Puerto Rico in one of the following two ways:

A.—One proceeding consists in obtaining the registration of the new work taking the opportunity that a constitutive, declarative, acknowledged, modifying or transferring title of the ownership or of a real right is recorded in which *the new work constructed is stated*.

B.—Another proceeding is that which takes place when the new work is sought to be recorded, not together with the registration of a recordable act, but separately by the formalization of an instrument solely for that purpose. *Muñoz* v. *Registrar of San Juan*, 23 P.R.R. 604 (1916); *Marcano* v. *The Registrar*, 20 P.R.R. 527 (1914); and *A. Sánchez & Co.* v. *Registrar of Property*, 16 P.R.R. 419 (1910); II Roca Sastre, *Derecho Hipotecario* 85–90 (5th ed.); I Galindo y Escosura, *Comentarios a la Legislación Hipotecaria de España* 359 (4th ed.); II Sabater, *Práctica Civil* 371.

■ When a structure is erected on another's land, only the proceeding indicated for the specific separate registration is the proper procedure. In *Suárez* v. *Registrar of San Juan*, 36 P.R.R. 173 (1927), upon recording a lot in the name of the municipality, mention was made of the fact that a certain person, with the consent of the municipality,

---

fore reversed *Gerena* v. *Registrar of Humacao*, 26 P.R.R. 79 (1918), and, consequently, *Blanco et al.* v. *Registrar of Caguas*, 27 P.R.R. 877 (1919); *Nido & Cía., S. en C.* v. *Registrar*, 74 P.R.R. 737 (1953); *Ruiz* v. *Torres*, 61 P.R.R. 1 (1942); *Dieppa* v. *Registrar of Aguadilla*, 33 P.R.R. 842 (1924); *Martínez* v. *Registrar of Mayagüez*, 32 P.R.R. 534 (1923); *Sociedad Protectora de Niños* v. *Registrar of San Juan*, 29 P.R.R. 909 (1921); *Rodríguez* v. *Registrar of Mayagüez*, 26 P.R.R. 66 (1917).

had constructed a house upon the lot in question. Record of a mortgage upon the house was subsequently denied on the ground that it was not recorded. In affirming the decision denying record, we said that "a mere recital in an entry made upon recording a deed in the name of the owner of the soil is not a record of the title to a building standing upon the land but *constructed by and belonging to a different owner, nor is it a record of such owner's title to the usufruct.*" (Italics ours.)

■ However, neither of these situations is present in the case under consideration, but rather, it concerns the state of law of a reference to structures constructed by a married person on property recorded as the separate property of such person. It should be noted that, in addition to the reference that the property contains those structures, the eighteenth entry of the real property states that the owner, in his own right, mortgaged specifically the lot containing the structures and the mortgage was recorded without entry of any defect. It is true that according to § 1304 of the Civil Code (31 L.P.R.A. § 3644) and the ruling in *Suc. Santos Alonso, Ltd.* v. *Reg. San Juan,* 26 P.R.R. 756 (1918), a lot recorded as separate property of a husband becomes community property whenever the community partnership constructs a building thereon. In the case under consideration the Registrar who made the eighteenth entry could have refused to record the mortgage on the ground that, since the property had become community property, the wife's concurrence was necessary in order to record the lien. Yet, he did not do so but, through error or inadvertence, upon recording the mortgage on the property and the structures he necessarily determined that the property and the structures were separate property, notwithstanding the state of law which we have just pointed out.

■■ It having been established in the case at bar that the structures on the parcel leased are those which were the

object of determination in the eighteenth and subsequent entries of the property from which the leased parcel was segregated,[2] our ruling is that such entries constitute "entries in the Registry referring to the same property," that is, to the parcel segregated and, more specifically, to the structures object of the decision involved in this appeal. Since this is so, the Registrar was bound to consider such entries as "valid in themselves and as to the act recorded (the structures in question), regardless of the defects" noted. Any party aggrieved by this situation may assert his rights by means of the proper judicial proceeding. Consequently, respondent Registrar could not pass again upon such properties on the theory that they were being recorded for the first time on the parcel segregated, for although it is true that in the instrument of lease it was said that those structures "do not appear recorded in the Registry," the fact is that this constitutes an erroneous statement, a possible inadvertence which could not have nor has by itself the effect of changing the situation of fact appearing from the entries of the Registry referring to the same property. Hence, the Registrar erred in passing again upon the same property in a manner contrary to the determination thereof appearing from the Registry.

The decision appealed from will be reversed and the registration of said deed No. 27, executed on June 6, 1958 before Notary Public José Carbia Miranda, is ordered, free of defects.

---

[2] The parcel in question is bounded on the north by state highway No. 2, on the south by the remainder of the property from which it is segregated, on the east by an alley, and on the west by a street. This situation tends to confirm the conclusion that the structures object of this petition were constructed on the part of the main property which constitutes the parcel segregated, since it must be presumed that structures erected for purposes of a service station would be located on that part of the property which is more accessible to the main road and having more traffic, in this case state highway No. 2.